IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FREDDIE MAXINE BROWN,            )
                                 )
     Plaintiff,                  )
                                 )
     v.                          )     1:05CV01069
                                 )
NOVANT HEALTH, INC.,             )
                                 )
     Defendant.                  )

MEMORANDUM OPINION

OSTEEN, District Judge

Plaintiff Freddie Maxine Brown, a former employee of Defendant Novant Health, Inc.,[1] filed an action in this court alleging race discrimination, disparate treatment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., wrongful discharge in violation of public policy pursuant to the Equal Employment Practices Act, North Carolina General Statute § 143-422.1 et seq., and negligent supervision and retention of Penny Benton. Before this court is Defendant's Motion for Summary Judgment. For the reasons stated below, the court will grant Defendant's motion.

---

[1] Defendant notes that Plaintiff was an employee of Forsyth Memorial Hospital, a corporation for which Defendant is a holding company. For purposes of this motion, however, the court does not need to make a finding as to whether Plaintiff was employed by Defendant.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a black female, was employed as a vital statistician at Forsyth Memorial Hospital, an entity for which Defendant is a holding company. During her employment, Plaintiff was supervised by Nurse Manager Penny Benton, a white female, and Nydia Harter, a Hispanic female, who served as the director of nursing. According to Plaintiff, the event that began her suspicion of discrimination involved an incident where she attempted to collect information from a Hispanic patient.

Around February 2004, Plaintiff was attempting to gather information from a Hispanic patient regarding the name of her baby's father. Due to the language barrier, Plaintiff sought the assistance of an interpreter. In her attempts to explain to the patient that the baby's biological father, not the patient's current boyfriend, had to appear on the birth certificate, the patient grew upset, eventually throwing Plaintiff out of the room. The patient subsequently complained about Plaintiff's behavior causing Plaintiff to be put on probation. Plaintiff then complained to Ms. Benton, who referred her to the Employee Assistance Program ("EAP") in order to help her improve her communication skills.

Ms. Harter eventually became aware of the incident involving Plaintiff and the patient and was allegedly offended. According to Plaintiff, Ms. Harter accused her of discriminating against

2

Hispanics.[2]  "After the accusation by Harter, the plaintiff went to the EEO [Equal Employment Opportunity] on-site office and filed a charge of discrimination and retaliation."  (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. at 3.)  After filing her charge, Plaintiff received additional written warnings on June 10, 2004, and September 28, 2004.[3]  Then, on February 3, 2005, Plaintiff received another complaint against her for the same type of rude behavior.  Since this was Plaintiff's third violation within a twelve-month period, her employment was terminated.  In response, Plaintiff filed suit against Defendant alleging race discrimination, retaliation, wrongful termination/discharge, and disparate treatment.[4]

## II.  LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials

---

[2] In Plaintiff's response to the pending motion for summary judgment, she appears to abandon any theory that Ms. Benton discriminated against her.  Instead, she bases her claim on the actions of Ms. Harter.

[3] These written warnings were not isolated events. According to her employee file, Ms. Brown received similar complaints or counseling for inappropriate or rude behavior on March 5, 1990, October 19, 2000, November 5, 2003, November 25, 2003, February 27, 2004, March 8, 2004, and December 10, 2004. (Aff. Marilyn L. Gilliam at 2-3.)

[4] In count one of Plaintiff's complaint, she also alleged negligent supervision and retention of Penny Benton.  That claim requires no analysis, however, because the claim depends on the survival of Plaintiff's other claims.

3

before the court demonstrates that no genuine issues of material facts exist, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986). If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a <u>genuine issue for trial</u>."

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356 (1986) (citations & footnote omitted) (quoting Fed. R. Civ. P. 56). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must "determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable. <u>Id.</u> at 255, 106 S. Ct. at 2513. However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(c); <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

4

**III. ANALYSIS**

   **A. Discrimination and Disparate Treatment**

Plaintiff claims that she was singled out for criticism and discipline and was ultimately terminated on account of her race in violation of Title VII. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2 (2006). The Fourth Circuit applies the <u>McDonnell Douglas</u> scheme of proof in Title VII claims in instances "where the defendant disavows any reliance on discriminatory reasons for its adverse employment action." <u>Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.</u>, 53 F.3d 55, 57-58 (4th Cir. 1995) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817 (1973)).

Under the <u>McDonnell Douglas</u> test, the plaintiff bears the burden of production and must establish a prima facie case of discrimination by the preponderance of the evidence. <u>Runnebaum v. NationsBank of Md.</u>, 123 F.3d 156, 164 (4th Cir. 1997) (citation omitted). After meeting this burden, Plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against her. <u>Id.</u> (citation and internal quotations omitted). Then, the employer must set forth reasons for its

5

action which would "support a finding that unlawful discrimination was not the cause for the employment action." <u>Id.</u> (citations and internal quotations omitted). Once the employer meets this burden, the presumption of discrimination "drops from the case," and the plaintiff must show that the articulated reason is a pretext for discrimination. <u>Id.</u> (citing <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 255, 101 S. Ct. 1089, 1094-95 (1981)). In cases like these, the plaintiff still bears the burden of proof, meaning that summary judgment is appropriate unless she presents adequate evidence that the employer unlawfully discriminated. <u>Id.</u> (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-11, 113 S. Ct. 2742, 2747-49 (1993)).

In order to establish a prima facie case of discrimination under Title VII, a plaintiff must show by a preponderance of the evidence that: "(1) she was a member of the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." <u>Ennis</u>, 53 F.3d at 58 (citations omitted). In order to defeat summary judgment, a plaintiff must offer more than mere unsupported speculation. <u>Id.</u> at 62. There must be evidence on which the jury could reasonably find for the plaintiff because "the mere existence of a scintilla of evidence in support of the

6

plaintiff's position will be insufficient." Runnebaum, 123 F.3d at 164 (citation and internal quotations omitted).

In this case, Plaintiff fulfills the first two elements required to establish a prima facie case, but cannot show that she was performing her job at a level that met Defendant's legitimate expectations.  Plaintiff's employee record is replete with written complaints concerning her attitude toward patients, doctors, and others.  Though Plaintiff argues that such conduct is irrelevant when measuring her qualifications for and abilities as a vital statistician, Defendant specifically lists the exercise of reasonable care, consideration, or courtesy in dealing with customers as a serious rule, the violation of which will result in discharge.  (Aff. Marilyn L. Gilliam Ex. A.) Plaintiff's three violations of this rule within a span of twelve months, therefore, were a sufficient nondiscriminatory reason for her termination.

Since Defendant set forth legitimate reasons for Plaintiff's termination, Plaintiff now bears the burden of showing that her termination was really a pretext for discrimination.  Plaintiff has not met her burden.  Instead of attacking the accusations against her as untrue or demonstrating that others who received the same number of complaints against them were not discharged, Plaintiff states that Defendant failed to articulate an objective reason for her termination and that the reason she was terminated

7

was subjective and unrelated to the qualifications necessary to perform her position. As mentioned above, Defendant established rules of conduct that were a "serious" part of Plaintiff's job. (Id.) Though perhaps the complaints against her by the patients were subjective at the outset, the sheer number of violations resolves any concern that they were purely coincidental.[5] When viewed as a whole by those in charge of making employment decisions, a reasonable and objective determination was made to terminate Plaintiff's employment. Plaintiff was then provided a detailed written explanation for the adverse employment action against her that contained descriptions of the events serving as the basis of their decision. The court cannot discern from these facts any basis to find discriminatory animus. Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's disparate treatment and discrimination claim will be granted.

**B. Retaliation**

In order to establish a prima facie case for retaliation, a plaintiff must prove: "(1) that [she] engaged in a protected activity; (2) that [her] employer took an adverse employment

---

[5] Whether the complaints made against her were subjective or objective, those making the complaints were offended by Plaintiff's demeanor. Regardless, Plaintiff has failed to show how subjective complaints could lead to an inference of discrimination, especially when these complaints were not contrived by Defendant's employees.

8

action against [her]; and (3) that there was a causal link between the two events." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005). When reviewing retaliation claims, courts use the same analytical framework set forth in McDonnell Douglas. Accordingly, if an employer provides a non-retaliatory reason for its action, the burden shifts to the plaintiff to show that the employer's proffered reason is pretextual and that the employer's motivation was retaliatory. Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004).

Plaintiff engaged in protected activity by filing a claim with the Equal Employment Opportunity ("EEO") office, and she also suffered an adverse employment action[6] when she was terminated from employment. In order to bring a successful claim for retaliation, however, Plaintiff must show a causal link between her act of filing a claim with the EEO office and Defendant's decision to discharge her. EEOC, 424 F.3d at 405-06. She must offer some substantial evidence to support this claim because "[a] plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a prima facie case." Mackey v. Shalala, 360 F.3d 463, 469-70 (4th Cir. 2004).

---

[6] An adverse employment action is a discriminatory act that "alter[s] the terms, conditions, or benefits of employment," as well as "ultimate employment decisions such as hiring, granting leave, discharging, promoting and compensating." Von Gunten v. Maryland, 243 F.3d 858, 865-66 (4th Cir. 2001).

9

Plaintiff has failed to provide any facts that would lead a reasonable juror to conclude that her act of filing a claim against Ms. Harter led to Ms. Benton's decision to terminate her employment.[7] In fact, the decision to discharge Plaintiff did not occur until seven months after Plaintiff filed her claim. Moreover, the decision was a result of the additional warnings to Plaintiff and her failure to change her behavior. Accordingly, the court finds no causal link between the filing of Plaintiff's claim and her termination from employment. The court, therefore, will grant summary judgment in favor of Defendant on Plaintiff's retaliation claim.

**C. Wrongful Termination under North Carolina Law**

Generally, the termination of an at-will employee does not give rise to an action for wrongful discharge under North Carolina law. Considine v. Compass Group USA, Inc., 145 N.C. App. 314, 317, 551 S.E.2d 179, 181 (N.C. Ct. App. 2001). The law does provide certain exceptions, "including a prohibition against termination for a purpose in contravention of public policy." Id. One of the recognized exceptions includes situations where there are federal and state statutes in place that "prohibit[] employers from discharging employees based on impermissible considerations such as the employee's age, race, sex, religion,

---

[7] Though Defendant's employees claim that the decision to terminate Plaintiff was made by more than one person, Ms. Benton's signature is on the final discharge document.

10

national origin, or disability, or in retaliation for filing certain claims against the employer." Kurtzman v. Applied Analytical Indus., 347 N.C. 329, 331, 493 S.E.2d 420, 421 (N.C. 1997).

In order to state a claim for wrongful termination within the aforementioned exception, an at-will employee "has the burden of pleading and proving that the employee's dismissal occurred for a reason that violates public policy," in this case North Carolina General Statute § 143-422.2. Id. This statute recognizes that North Carolina's public policy "protect[s] and safeguard[s] the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2 (2006).

Plaintiff claims that her termination was wrongful because Defendant based its decision to discharge her on account of her race and filing of a complaint against Ms. Harter. As discussed above, Defendant had a legitimate nondiscriminatory reason for its action. Plaintiff was not meeting Defendant's expectations, but rather accumulated a number of complaints against her. Plaintiff failed to raise any issue of material fact to dispute this finding. Accordingly, the court will grant summary judgment in favor of Defendant on this claim.

11

**D. Negligent Supervision and Retention**

To establish a prima facie case of negligent supervision or retention under North Carolina law, a plaintiff must prove two elements: "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." Smith v. First Union Nat'l Bank, 202 F.3d 234, 249-50 (4th Cir. 2000) (citation omitted). It is unclear to this court how Plaintiff anticipates to pursue her claim for negligent supervision and retention when she has not alleged a single fact to support such a claim. Plaintiff has not produced any evidence that would lead a reasonable juror to conclude that Ms. Benton committed a tortious act against her. Accordingly, the court will grant summary judgment in favor of Defendant on this claim.

**III. CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment will be granted.

An order and judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

This the 23rd day of May 2007.

                                      /s/ William L. Osteen
                                      United States District Judge